The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DORAL BANK PUERTO RICO, on Behalf of Itself and All Others Similarly Situated, | **Case No.: C09-1557 (MJP)** |
| Plaintiff, | |
| v. | |
| WASHINGTON MUTUAL ASSET ACCEPTANCE CORPORATION; DAVID BECK; DIANE NOVAK; THOMAS LEHMANN; STEPHEN FORTUNATO; DONALD WILHELM WAMU CAPITAL CORPORATION; MOODY'S INVESTORS SERVICES, INC.; THE MCGRAW-HILL COPMANIES, INC.; FIRST AMERICAN CORPORATION and FIRST AMERICAN EAPPRAISEIT, LLC, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
APPOINTMENT OF DORAL BANK PUERTO RICO AS LEAD PLAINTIFF
AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

No. C09-1557-MJP

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. PRELIMINARY STATEMENT ........................................................................................ 3

III. FACTUAL BACKGROUND ............................................................................................ 4

IV. PROCEDURAL HISTORY ............................................................................................... 6

V. ARGUMENT ...................................................................................................................... 7

   A. Doral Bank Should Be Appointed as Lead Plaintiff ............................................ 7

      1. Doral Bank's Motion Is Timely ..................................................................... 7

      2. Doral Bank Believes that It Possesses the Largest
         Financial Interest in the Relief Sought by the Class                    8

      3. Doral Bank is Otherwise Qualified Under Rule 23 ...................................... 8

   B. The Court Should Approve Doral Bank's Choice of Counsel ............................ 11

VI. CONCLUSION ................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Buus v. WAMU Pension Plan*,
    251 F.R.D. 578 (W.D. Wash. 2008) ...................................................................................10

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2007) .............................................................................................9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1997) ........................................................................................9, 10

*Hanon v. Dataproducts Corp.*,
    976 F. 2d 497 (9th Cir. 1992) ..............................................................................................9

*In re Badger Mountain Irr. Dist. Sec. Litig.*,
    143 F.R.D. 693 (W.D. Wash. 1992) ....................................................................................9

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..........................................................................2, 3, 10, 11

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997).........................................2

*Linn v. Allied Irish Banks, PLC*,
    No. 02 Civ. 1738, 2004 WL 2813133 (S.D.N.Y. Dec. 8, 2004)....................................2

*Roshandel v. Chertoff*,
    554 F. Supp. 2d 1194 (W.D. Wash. 2008)......................................................................9, 10

STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
    Rule 23 ......................................................................................................... *passim*

12 U.S.C.
    § 1819(b)(2)(B)...................................................................................................6

15 U.S.C.
    § 77k....................................................................................................................4
    § 77l(a)(2)(j)(b) ..................................................................................................4
    § 77o....................................................................................................................4
    § 77z-1 ........................................................................................................ *passim*

28 U.S.C.
 § 1332 ..................................................................................................................................6
 § 1441 ..................................................................................................................................6
 § 1446 ..................................................................................................................................6
 § 1453 ..................................................................................................................................6

**OTHER AUTHORITIES**

H.R. Conference Report on the Private Securities Litigation Reform Act of 1995,
 H.R. Rep. No. 104-369 (1995). ............................................................................................8

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that class member Doral Bank Puerto Rico ("Doral") will hereby move this Court, on a date and such time as may be designated by the Court, for an order (1) appointing it as lead plaintiff in the above-captioned action (the "Doral Action") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1, *et seq.*; and (2) approving its selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as lead counsel for the class and Tousley Brain Stephens PLLC ("Tousley") as liaison counsel.

This motion is made on the grounds that Doral Bank timely filed this motion and is the most adequate plaintiff. Doral Bank has the most substantial financial interest in the relief sought by the class, and meets the requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of the claims of the class and will fairly and adequately represent the interests of the class. In addition, Doral Bank has selected and retained Cohen Milstein, a law firm which has substantial experience in prosecuting securities class actions.

This motion is based on this notice of motion and memorandum of law, the Declaration of Christopher Lometti ("Lometti Decl.") in support thereof, the pleadings and other files and records in the Doral Action and such other written or oral argument as may be presented to the Court.

## I. INTRODUCTION

Doral Bank respectfully submits this memorandum in support of its motion (1) to be appointed lead plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the PSLRA and (2) for approval of its selection of the law firm Cohen Milstein as lead counsel for the class and Tousley as liaison counsel.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff from among those seeking such appointment and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the movant or group of movants with the largest financial interest in the litigation. *See* 15 U.S.C. § 77z-1(a)(3)(B).

The present matter is a class action that alleges violations of the Securities Act and Washington State Law. The PSLRA establishes a three-step procedure for the selection of lead plaintiffs to oversee class actions brought under the federal securities laws. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).[1] First, § 27(a)(3)(A)(i) provides that within 20 days after the date on which a securities fraud class action is filed, the initial plaintiff is required to publish a notice advising potential plaintiff class members of the pendency of the action, the claims, the purported class period, and that any member of the class may file a motion with the Court to serve as lead plaintiff no later than 60 days from the publication of that original notice. 15 U.S.C. § 77z-1(a)(3)(A)(ii). Notice of the Doral Action was published, pursuant to this Court's December 18, 2009 Order, on December 24, 2009. *See* Lometti Decl., Ex. A.

Under the Securities Act, the Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff for the class. The Securities Act provides that the Court shall presume to be the lead plaintiff that the person or persons who: (1) have either filed a complaint or moved for lead plaintiff in response to a notice; (2) "ha[ve] the largest financial interest in the relief sought;" and (3) satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15

---

[1] In *Cavanaugh*, the Ninth Circuit granted *mandamus* review of a lead plaintiff appointment pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"). 306 F.3d at 727. The appointment procedure described by the Circuit Court in *Cavanaugh* is equally applicable here, as the lead plaintiff provisions of the Securities Act and the Exchange Act are interchangeable. *Linn v. Allied Irish Banks, PLC*, No. 02 Civ. 1738, 2004 WL 2813133, at *3 n.2 (S.D.N.Y. Dec. 8, 2004) (noting that "'the lead-plaintiff provisions of the 1933 and 1934 acts are identical'") (quoting *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *2 n. 2 (N.D. Ill. Aug. 11, 1997)).

U.S.C. § 77z-1(a)(3)(B)(iii)(I). Finally, after the presumptive lead plaintiff has been identified, other class members have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F. 3d at 730.

For the reasons set forth below, Doral Bank is "the most adequate plaintiff[s]" under the PSLRA to serve as lead plaintiff in the Doral Action. Doral Bank alleges that it has the largest financial interest in the relief sought by this action by virtue of its expenditure of $421,753,412.00 in purchases of the WaMu Mortgage Pass-Through Certificates that are the subject of the Doral Action. *See* Lometti Decl., Ex. B. Doral Bank further satisfies the relevant requirements of Rule 23 as an adequate class representative with claims typical of the other purchasers of WaMu Mortgage Pass-Through Certificates at issue in the Doral Action. Moreover, Doral Bank is a sophisticated financial institution, experienced in conducting and supervising counsel in complex litigation. Additionally, Doral Bank's selection of Cohen Milstein as lead counsel should be approved because it, as the presumptive lead plaintiff, has selected competent counsel. Cohen Milstein has extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members as lead counsel. *See* Lometti Decl., Ex. C.

## II. PRELIMINARY STATEMENT

Presently pending in this Court is the Doral Action brought on behalf of a class of purchasers of WaMu Mortgage Pass Through Certificates (the "Certificates"), issued pursuant and traceable to a Registration Statement filed by WaMu Asset Acceptance Corporation ("WMAAC") with the Securities and Exchange Commission on March 13, 2006, thereafter supplemented on April 9, 2007 (the "2007 Registration Statement"), in a series of 13 public offerings which took place between April 23, 2007 and June 26, 2007 (the "Offerings"). The

Complaint filed in the Doral Action alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2)(j)(b) and 77o, and violations of Washington State Law. Doral Bank hereby moves this Court for an order appointing it as lead plaintiffs for the Doral Action and approving its selection of counsel.

### III. FACTUAL BACKGROUND

Washington Mutual Bank was once the United States' largest savings and loan association. Among other things, Washington Mutual Bank ("WMB") operated as a mortgage lender, originating billions of dollars of mortgage loans to consumers annually. As alleged in the Doral Action, the bank's parent company, Washington Mutual, Inc., and its subsidiaries engaged in the sale of mortgage-related securities, *i.e.,* the Certificates, backed by the mortgage loans originated by WMB.

The Certificates were collateralized by mortgages originated by WMB which, at all relevant times, was a residential mortgage lender. The mortgages, as set forth in the Registration Statement, were to be the principal source by which Certificate purchasers were to obtain repayment of their investment plus interest. As also set forth in the Registration Statement, the mortgages were purportedly originated pursuant to specific underwriting procedures and guidelines (the "Guidelines") of WMB.

Investors, such as Doral Bank, purchased the Certificates based upon three primary factors: (i) return, in the form of interest payments; (ii) the timing of principal and interest payments; and (iii) the safety of the investment – *i.e.*, AAA/maximum security rating and the low risk of default of the underlying mortgage assets. The Action alleges that the billions of dollars worth of Certificates that WMAAC issued in the Offerings have been revealed to be backed by mortgages that were recklessly underwritten, and, as such, are at high risk of default.

The Underwriter of the Offerings was Defendant WCC. WCC was obligated to conduct meaningful due diligence to ensure that the Registration Statement and Prospectus Supplements contained no material misstatements or omissions of fact necessary to make those misstatements not misleading, including the stated manner in which the mortgages had been originated – *i.e.,* the Guidelines. WCC received substantial fees for their work in connection with each of the 13 Offerings at issue in the Doral Action.

Based on, inter alia, WMB and WCC's due diligence and the representations in the Offering Documents relating the underwriting of the Certificate collateral, and the appraisals obtained by WMB from property appraisers, including Defendants First American Corporation and First American eAppraiseIT LLC ("Appraiser Defendants"), nationally recognized statistical ratings organizations ("NRSRO"), such as Moody's Investors Service, Inc. ("Moody's") and the McGraw-Hill Companies' division of Standard & Poor's ("S&P") (collectively, the "Ratings Agencies") assigned the Certificates among the highest ratings applicable to such debt issues. At the time of the Offerings, the Certificates were issued at approximately par or $1.00 per Certificate.

Following the issuance of the Certificates, disclosures began to emerge revealing that WMB and the Appraiser Defendants routinely disregarded the underwriting guidelines in originating the Certificate collateral. These disclosures were confirmed by substantially higher rates of delinquencies and foreclosures on collateral for such highly-rated debt issues. These disclosures and the poor performance of the collateral caused the Rating Agencies to recognize that the true nature of the collateral had not been properly assessed at the time of the Offering. The Rating Agencies thus applied new "methodologies" to reflect the actual "aggressive underwriting" which had been used to originate the Certificate collateral. As a result, the Rating

Agencies dramatically downgraded the Certificates. The revelations regarding the true underwriting practices used to originate the underlying collateral and the true value and quality of that collateral caused the value of the Certificates to substantially collapse. As a result, the Certificates are no longer marketable at prices anywhere near the price paid for them, and the holders of the Certificates are exposed to much more risk with respect to the timing of, and absolute cash flow to be received, than the Offering Documents represented.

### IV. PROCEDURAL HISTORY

On August 14, 2009, this Court consolidated three putative class actions related to sales of Washington Mutual's mortgage-backed securities under the case number for the matter captioned *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates, et al.*, 2:09-cv-00037-MJP (W.D. Wash.) ("Boilermakers Action" or the "Consolidated Action"). (Boilermakers Action Dkt. No. 70). The Court appointed The Policemen's Annuity and Benefit Fund for the City of Chicago ("Chicago PABF") and its counsel, Scott+Scott LLP ("S+S"), as Lead Plaintiff and Lead Counsel for the Consolidated Action on October 23, 2009. (*Id.* at No. 95). In accordance with this Court's Order, Lead Plaintiff was directed to file a Consolidated Amended Class Action Complaint on November 23, 2009 (the "Consolidated Complaint"). *See id*. at No. 99.

Thereafter, the Doral Action was filed on October 30, 2009, in the United States District Court for the Western District of Washington as a related-case to the Boilermakers Action. The allegations set forth in the Doral Action are substantially identical to the collective complaints consolidated in the Consolidated Action. (Doral Action Dkt. No. 1). The Doral Action asserts the same violations of the federal and state securities acts and the same common law claims against the same defendants in the Consolidated Action. Although the Doral Action was originally

assigned to Judge Robart, this court *sua sponte* transferred the case to Judge Pechman because it is related to the Consolidated Action. (Doral Action Dkt. No. 15).

Because of the substantial similarities and relatedness between the Doral and Boilermaker Actions, Lead Counsel for the Boilermakers Action and Cohen Milstin filed a Joint Motion to Consolidate the Actions on November 19, 2009. (Boilermakers Action Dkt. No. 101). Thereafter, on November 23, 2009, Lead Counsel in the Boilermakers Action filed a Consolidated First Amended Securities Class Action Complaint ("Boilermakers FAC"), naming Doral Bank as an additional-named plaintiff and incorporating the allegations asserted in the Doral Action. (Boilermakers Action Dkt. No. 103).

By Order dated December 18, 2009, this Court denied the motion to consolidate the Doral and Boilermakers Actions pending issuance of a new PSLRA notice in the Doral Action and the appointment of lead plaintiff therein. (Boilermakers Action Dkt. No. 118). Counsel for Doral Bank published notice of the lawsuit pursuant to the PSLRA on December 24, 2009. *See* Lometti Decl., Ex. A. Thereafter, counsel for Doral Bank filed a First Amended Securities Class Action Complaint ("Doral FAC") on December 31, 2009. *See* Lometti Decl., Ex. D. This motion is being timely filed within 60 days of publication of the PSLRA notice in a nationally circulated, business-oriented publication.

### V.     ARGUMENT

**A.     Doral Bank Should Be Appointed as Lead Plaintiff in the Action**

**1.     Doral Bank's Motion Is Timely**

As noted *supra*, in compliance with 15 U.S.C. § 77z-1(a)(3)(A)(i), Doral Bank is timely filing its motion for appointment as lead plaintiff within 60 days of the December 24, 2009 publication of the PSLRA notice.

### 2. Doral Bank Believes that it Possesses the Largest Financial Stake in the Relief Sought by the Class

The PSLRA provides that courts:

[S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 77z-1(a)(3)(B)(i). The Securities Act requires this Court to adopt a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Congress reasoned that increasing the role of larger investors, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake or more apt to effectively manage complex securities litigation. *See* H.R. Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369 at 34 (1995) ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."). Thus, Doral Bank, having expended over $400 million to purchase WaMu Certificates pursuant and traceable to the Registration Statement, lost a significant amount of its investment when the true value of the Certificates plummeted. *See* Lometti Decl., Ex. B. It is exactly the type of lead plaintiff envisioned by Congress and should be appointed here.

### 3. Doral Bank is Otherwise Qualified Under Rule 23

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act provides that, at the outset of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(1)(3)(B)(iii)(I)(cc). With respect to the

qualifications of the class representative, Rule 23(a) requires generally that the plaintiff's claims be typical of the claims of the class and that the representative fairly and adequately protect the interests of the class. As detailed below, Doral Bank satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff here.

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs have (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992); *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 699 (W.D. Wash. 1992). The Ninth Circuit has held that Rule 23(a)(3) should be interpreted somewhat permissively and that "'representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1997)); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1204 (W.D. Wash. 2008).

Here, the questions of law and fact common to the members of the class that predominate over questions that may affect individual class members include the following:

(i) whether the Securities Act was violated by defendants;

(ii) whether Washington State Law was violated by defendants;

(iii) whether the Registration Statement and Prospectuses contained false statements and/or omissions;

(iv) whether defendants were negligent in issuing the Registration Statement and Prospectuses; and

(v) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case. The claims asserted by Doral Bank, which acquired WaMu Mortgage Pass-Through Certificates pursuant and traceable to the materially misleading Offering Documents, are typical of the claims of the members of the proposed class. Because the claims asserted by Doral Bank are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" typicality is satisfied. *Roshandel*, 554 F. Supp. 2d at 1204 (citation omitted).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020. In order to satisfy this requirement, a prospective lead plaintiff must show that he, she or it does not have any conflicts of interest with other class members and that the plaintiff and counsel will vigorously prosecute the case. *Buus v. WAMU Pension Plan*, 251 F.R.D. 578 (W.D. Wash. 2008). In the context of a motion to appoint lead plaintiff in a securities fraud class action, the key inquiry is not whether another class member might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will ***not*** do a fair and adequate job. *Cavanaugh*, 306 F.3d at 732.

Here, Doral Bank will more than adequately represent and protect the interests of the class. First, its interests are clearly aligned with the members of the proposed class and there is no evidence of any antagonism between its interests and the interests of the proposed class members. Second, as detailed above, it shares substantially similar questions of law and fact

with the members of the proposed class and its claims are typical of the members of the class. Third, Doral Bank has amply demonstrated that it will adequately serve as class representatives by signing a sworn certification affirming its willingness to serve as, and assume the responsibilities of, a class representative. *See* Lometti Decl., Ex. B. Finally, Doral Bank has retained and selected Cohen Milstein, a firm that is highly experienced in prosecuting securities class actions, to vigorously prosecute this action on behalf of the class. *See* Lometti Decl., Ex. C. Therefore, Doral Bank satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed as such pursuant to 15 U.S.C. § 77z-1(a)(3)(B).

### B. The Court Should Approve Doral Bank's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35. As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). Here, Doral Bank selected the law firm of Cohen Milstein to represent the class. Cohen Milstein has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Lometti Decl., Ex. C. In addition, Doral has selected the local Washington-based law firm of Tousley to serve as liaison counsel for the class. This firm is similarly experienced in the successful prosecution of securities fraud actions on behalf of injured investors and will work cooperatively and diligently with lead counsel to achieve the best and most equitable result for the class.

Cohen Milstein has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud. By applying innovative legal theories

and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities fraud actions. Most recently, Cohen Milstein successfully negotiated two partial settlements totaling approximately $90 million in *In re Parmalat Securities Litigation,* No. 04-1653 (S.D.N.Y.). Cohen Milstein also recently achieved an historic settlement of $145 million for U.S. and foreign investors *In re SCOR Holding (Switzerland) AG (F/K/A Converium Holding AG) Securities Litigation*, No. 04-cv-7897 (S.D.N.Y.). Additional significant securities settlements obtained by Cohen Milstein, acting as lead or co-lead counsel, include: *In re Lucent Technologies Securities Litigation*, No. 00-cv-621 (D.N.J.) (settlement of over $500 million in cash stocks and warrants); *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 03-cv-4080 (S.D.N.Y) (settlement of $125 million); *In re Verisign, Corp. Securities Litigation*, 02-cv-2270 (N.D. Cal.) (settlement of $78 million); *In re Southmark Securities Litigation*, 3-89-1387 (N.D. Tex.) (settlement of $70 million); *In re Proquest Securities Litigation*, 06-cv-10619 (E.D. Mich.) (settlement of $20 million); *In re Globalstar Securities Litigation*, 07-cv-00976 (S.D.N.Y) (settlement of $20 million, negotiated near the end of the second week of the trial in the case); *In re Chicago Bridge and Iron Co. Securities Litigation*, 06-cv-0183 (S.D.N.Y.) (settlement of $10.5 million and the defendant agreed to enact corporate governance reforms).

Furthermore, Cohen Milstein has extensive experience in diligently prosecuting securities law claims on behalf of purchasers of mortgage-backed securities issued by various entities. In addition to serving as additional plaintiff's counsel in the Consolidated Action, Cohen Milstein is actively involved in prosecuting several other securities class action litigations premised on misstatements and omissions made in connection with the issuance of mortgage-backed securities. *See* Lometti Decl., at 2. Specifically, in the *Bear Stearns Mortgage Pass-Through*

*Certificates Litig.,* Civ. No. 08-cv-8093-LTS (S.D.N.Y.) (the "Bear Stearns Action"), Judge Laura Taylor-Swain, in appointing Cohen Milstein as co-lead counsel, recognized the contributions of the firm and its clients as follows:

> The Funds' extensive experience with this litigation . . . indicates that their designation as a co-lead plaintiff would further judicial efficiency and be in the best interests of the putative class. The considerable efforts undertaken by the Funds to date on behalf of the putative class include, *inter alia*, the drafting and filing of the NJ Carpenters Health Fund's Amended Complaint.
>
>         \*   \*   \*
>
> ….for the purposes of this Memorandum Opinion and Order, that the [Funds'] Amended Complaint appears to be the product of extensive research and analysis. The Court therefore credits the Funds with that effort.

*Bear Stearns Action*, Order Appointing Lead Plaintiff dated December 28, 2009, Dkt. No. 89.

Similarly, as set forth above, Cohen Milstein attorneys were responsible for initiating and filing the Boilermakers Action in January 2009, and those attorneys have been prosecuting and contributing to the prosecution of the Consolidated Action for over twelve months. While this Court declined to appoint co-lead counsel in the that Action, Cohen Milstein has provided integral work and support to the lead and liaison counsel in the Boilermakers Action as counsel for additional-named plaintiffs Boilermakers and Doral Bank.

## VI. CONCLUSION

For all the foregoing reasons, Doral Bank respectfully requests that the Court: (i) appoint it as lead plaintiff in the Doral Action pursuant to § 27D(a)(3)(B) of the Securities Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1;and (ii) approve its selections of the law firm of Cohen Milstein to serve as lead counsel and the local Washington-based law firm of Tousley to serve as liaison counsel pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v).

DATED: February 22, 2010

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

/s/ Christopher Lometti
Christopher Lometti (*pro hac vice*)
Joel P. Laitman (*pro hac vice*)
Daniel B. Rehns (*pro hac vice*)
Kenneth M. Rehns
150 East 52nd Street, 30th Floor
New York, NY 10022
Tel: 212-838-7797
Fax: 212-838-7745
*clometti@cohenmilstein.com*
*jlaitman@cohenmilstein.com*
*drehns@cohenmilstein.com*
*krehns@cohenmilstein.com*

Steven Toll
Julie Reiser, WSBA #27485
1100 New York Ave, N.W.
Suite 500 West
Washington D.C. 20005
Tel: 202-408-4600
Fax: 202-408-4699
*stoll@cohenmilstein.com*
*jreisner@cohenmilstein.com*

*Proposed Lead Counsel*

TOUSLEY BRAIN STEPHENS PLLC
Kim D. Stephens, WSBA #11984
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-4416
Tel: 206-682-5600
Fax: 206-682-2992
*kstephens@tousley.com*

*Proposed Liaison Counsel*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on the 22nd day of February, 2010, I electronically filed the |
| 3 | foregoing with the Clerk of the Court using the CM/ECF system which will send notification of |
| 4 | such filing all counsel of record. |
| 5 | |
| 6 | DATED this 22nd day of February, 2010 at New York, New York. |

By: /s/   Daniel B. Rehns
Daniel B. Rehns (*Pro Hac Vice*)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
Telephone: (212) 838-7797
*drehns@cohenmilstein.com*